**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**RFL LIVING TRUST** **PLAINTIFF**

**v.** **No. 5:26-cv-45-BJB**

**LAKEVIEW LOANCARE, LLC, ET AL.** **DEFENDANTS**

* * * * *

## MEMORANDUM OPINION & ORDER

## I. BACKGROUND

### A. Allegations

*Pro se* plaintiff David Raheem Rose alleges that he executed a promissory note for a residential mortgage loan with Veterans United Home Loans in 2022. *See* DN 11-1 at 2; DN 11-2 at 1. Lakeview Loan Servicing subsequently sent Rose a letter stating that it would service Rose's loan in partnership with LoanCare. DN 11-1 at 6; DN 11-2 at 2. Several years later, apparently after Rose fell behind on payments, he challenged the authority of Lakeview and LoanCare (instead of the Department of Veterans Affairs) to collect payments and enforce the loan's terms. DN 11-2 at 1–2.

Around that time, in June 2025, Rose and his wife created the RFL Living Trust and purported to assign it their interest in the farm. They described the beneficiary of the Trust as "The RFL Faith-Based Ministry," which operates "through the ODAAT FARM Spiritual Farming Mission," but the couple stated they would continue to live on the property as before. Exhibits to Complaint (DN 1-1) at 12, 16. Rose considers the Trust to hold a "perfected security interest" in the mortgage such that Rose no longer owes any money to Lakeview or LoanCare (and perhaps not to anyone else, either, though the allegations remain unclear on this and other important points). *See id.* at 85. Although Rose created an "affidavit of trust" and "warranty deed" assigning the couple's interest in the farm to the Trust, *id.* at 12, 16, the record seems to lack any legal documents formalizing a relationship between the Trust and the loan. And no documents appear to perfect any security interest relative to the mortgager's interest.

Soon after creating the Trust, Rose began to send numerous letters on behalf of the Trust to "Lakeview LoanCare" (using LoanCare's address) requesting various proofs of ownership and contesting LoanCare's (or Lakeview's—the letters again are

not clear) ability to enforce the loan. *See id.* at 68–102. LoanCare responded with information about the loan, as well as the address of Lakeview Loan Servicing. *Id.* at 42–58, 62. Rose continued to request various ownership-related documents from LoanCare and refuse payment, so LoanCare eventually sent Rose a notice of default. *Id.* at 60.

**B. This Litigation**

This lawsuit began in December 2025 when the entity styled as "RFL Living Trust," with Rose listed as a trustee, sued "Lakeview Loancare, LLC" in state court.

The original complaint alleged several federal statutory violations, along with state-law contract and tort claims, all related to the mortgage. Complaint (DN 1-1) at 1–7. Lakeview Loan Services and LoanCare then removed the case to federal court, DN 1, and moved to dismiss, DN 7.

The Trust, which is not represented by a lawyer, purported to move to amend its complaint on March 6, 2026, in a filing apparently submitted by David Rose as trustee. *See* Motion for Leave to File Amended Complaint (DN 8). The proposed amendment replaced the previous claims with a claim for "Declaratory Relief and Accounting." Amended Complaint (DN 8-2) at 3. But the Defendants objected: the "Trustee does not have authority to litigate on behalf of the Trust and amendment would be futile." Opposition (DN 9) at 1.

About two weeks later, Rose, now representing himself *pro se*, filed a motion for leave to file a second amended complaint (DN 11). He did so without the Defendants' consent or permission from the Court, despite Federal Rule of Civil Procedure 15(a)(2)'s requirement of one or the other after an answer. That filing (DN 11) resembles the proposed amended complaint (DN 8-2)—except the new filing omits any mention of the RFL Living Trust and lists only Rose as a plaintiff, albeit one raising the same claims as the Trust previously had. *Id.*

Helpfully, if also conveniently, Rose's second notice "clarifies" that the initial pleadings referred to the RFL Living Trust "for contextual purposes only," not as an attempt to act on behalf of the Trust. Second Notice (DN 12) at 1. The initial and amended complaints, however, as well as the first notice of clarification (DN 10), asserted claims on behalf of the Trust. Yet those prior references to a trust, Rose now attests, "were not intended to assert claims on behalf of a separate legal entity." Second Notice at 1. This may reflect a belated recognition that non-lawyers, as the Defendants' opposition noted, "may not proceed in a *pro se* capacity as a trustee." *Great American Life Insurance v. Dixon*, 20 F. Supp. 3d 613, 616 (S.D. Ohio 2014) (citation omitted).

The Defendants again responded in opposition (DN 14) to Rose's (née RFL Trust's) second motion (DN 11) for leave to file an amended complaint. The Defendants' second brief, like their first, principally argues futility and *pro se* incapacity. That same day, they filed a third—a reply in support of their motion to dismiss—noting that Rose failed to respond to their motion to dismiss. Reply (DN 15) at 1. And even if the Court construed Rose's other filings as a response, the Defendants continued, they'd be tardy. *See id.* at 2; Local Rule 7.1(c). Rose then filed a motion for "Leave to File Sur-Reply" to the Defendants' reply, DN 16, arguing that he did not represent the Trust and that his second amended complaint should be addressed on the merits. *See* Sur-Reply (DN 16-1).

## II. Motions for Leave to File

*Pro se* plaintiffs receive considerable latitude in the construction of their pleadings and filings. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Given that generosity—as well as the efficiency called for by Federal Rule 1—the Court grants Rose's motion for leave to file the Second Amended Complaint (DN 11) and denies as moot RFL Living Trust's first motion for leave to file an amended complaint (DN 8). The Court deems the Second Amended Complaint (DN 11-2) operative given that Rose filed it in his own name, while its predecessors improperly asserted *pro se* claims by a corporate entity. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes."). So the Court grants—or alternatively denies as moot; the label makes no difference—the Defendants' motion to dismiss the original complaint (DN 7) and request to reject the first proposed amended complaint (DN 9).

The Court further grants Rose's motion for leave to file a sur-reply (DN 16). The request is effectively harmless given that the filing largely repeats Rose's contentions that his second amended complaint removes all references to the Trust. This request that the Court proceed to consider the merits of his allegations, *see* DN 16-1, moreover, is consistent with the law's general liberality in favor of both merits determinations and *pro se* parties.

Ultimately, the decision makes no difference to the analysis below.

That is because the Defendants are correct that Rose's amendments are futile for the substantive reasons discussed below. *See Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."). But granting this second motion for leave is consistent with preference under the Federal Rules of Civil Procedure and Sixth Circuit alike for "resolving cases on the merits instead of on the basis of procedural missteps." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010).

### III. MOTION TO DISMISS

A trial judge may apply a pending motion to dismiss to an amended complaint if the amended complaint is "substantially identical to the original complaint." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) (citation omitted). That allows the judge to "either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. National Recovery Solutions*, 955 F.3d 299, 303 (2d Cir. 2020). Here, the Second Amended Complaint merely removes the original's references to the Trust and narrows the claims to a single request for a declaratory judgment. Carrying forward the pending motion to dismiss "promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Id.* at 303.

"[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Manufacturing v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (construing FED. R. CIV. P. 8(a)(2)). In addressing the motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all its "well-pled factual allegations." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). In addition, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Rose's operative complaint would fail to establish the Defendants' liability even if he could prove up every fact he alleges.[1] Rose has reduced the voluminous exhibits he attached to his original complaint. *Compare* Complaint (119 pages of trust- and loan-related exhibits), *with* Second Amended Complaint (15 pages of loan-related exhibits). But the new complaint is sparse and equally hard to comprehend, even by

---

[1] Although the Court addresses Rose's complaint under Rule 12(b)(6), the complaint also bears some of the conspiratorial hallmarks of a Sovereign Citizen filing. To the extent that Rose's complaint raises legal theories aligning with such oft-litigated and regularly-rejected theories, the Court dismisses the complaint as frivolous under Rule 12(b)(1). *See Est. of Gardner v. Google, Inc.*, No. 3:25-cv-129, 2025 WL 1656661, at *6 (W.D. Ky. June 11, 2025); *Primero v. Barum*, No. 3:24-cv-200, 2024 WL 1543782, at *2 (W.D. Ky. Apr. 9, 2024); *Adkins v. Kentucky*, No. 3:18-mc-26, 2018 WL 6528462, at *1–2 (W.D. Ky. Dec. 12, 2018).

the lenient standards applied to *pro se* filings. He brings one claim for "Declaratory Relief and Accounting," stating that he is "entitled to a declaration clarifying whether Defendant possesses lawful authority to enforce the note." Second Amended Complaint at 3. But an accounting is not a legal claim or a source of substantive law; it is merely an equitable remedy. *See Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). So Rose's claim is by now limited to a request for a declaratory judgment.

What would he like the Court to declare? Essentially that he's not required to make mortgage payments to LoanCare or Lakeview. Second Amended Complaint at 1. He offers few specifics: identifying only a dispute "regarding ownership, documentation, and accounting" and a request to "declare the rights and obligations of the parties." *Id.* at 1, 3. The original complaint sought a declaratory judgment "that Defendant: (a) Lacks creditor status, (b) Lacks standing, (c) Is not a lawful holder, (d) Has no enforceable obligation, (e) Is barred from enforcement." Complaint at 4. Rose presumably wants a similar declaration now, though the operative complaint does not repeat this list. The Defendants, for their part, originally trained their motion on the dropped statutory and tort claims. Motion to Dismiss at 2. In their reply, they do not address the declaratory-judgment request further, arguing instead that Rose cannot litigate on behalf of the Trust and failed to timely respond. Reply at 1–4.

The Declaratory Judgment Act provides that "any court of the United States," faced with an "actual controversy within its jurisdiction," "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). Courts in this Circuit examine declaratory judgment jurisdiction under *Grand Trunk Western Railroad v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).[2] In the present suit, any exercise of jurisdiction would

---

[2] The five *Grand Trunk* factors are: "(1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective." *United Specialty Insurance v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Grand Trunk*, 746 F.2.d at 326)).

not "settle the controversy" or "serve a useful purpose in clarifying the legal relations in issue."[3] *Grand Trunk*, 746 F.2d at 326.

Rose wants "clarification and documentation regarding ownership of the loan and Defendant[s'] authority to enforce it." Second Amended Complaint at 2. This seems to be a request for documents that show LoanCare and Lakeview have authority to enforce the mortgage—documents and authority that Rose apparently suspects they lack. But Rose provides no details or explanation for why the Defendants' numerous responses to his requests are insufficient, at least not besides a bare assertion that they have not provided "any note endorsements or allonges associated with the promissory note." *Id.* What this means and why it might be required is hardly clear from his filings. And in any event, Rose concedes that the Defendants sent him "a notice of servicing transfer" "indicating that servicing responsibilities had been transferred" as well as numerous other documents regarding his loan. *Id.* at 2, 5–17. Without some rationale for why Rose believes his request for additional documents (if those documents exist) would resolve his claim—or at very least some legal theory through which the Court could view his request—Rose has failed to define the contours of his request such that the Court could sensibly resolve it.

Rose also asks the Court to more generally "declare the rights and obligations of the parties." *Id.* at 3. But even assuming an appropriate legal question were otherwise teed up, it's hardly clear how the Court could meaningfully "settle [a] controversy" over the loan servicers' rights relative to the Trust without the Trust as a party. *Grand Trunk*, 746 F.2d at 326. Rose has ostensibly cured his *pro se* incapacity by removing the Trust as a party to this case. But he replaced the Trust only with himself as its Trustee. And he has not renounced his theory that the Trust (not Rose) holds a "perfected security interest" in the mortgage such that Rose has no obligation to pay the Defendants. *See* Complaint at 85. This case, he maintains, "[r]etains the same operative facts," Motion to File Second Amended Complaint at 1, despite the substitution. And the Trust, he concedes, remains relevant for "contextual purposes." Second Notice at 1. So Rose has essentially changed the form (but not the substance) of this suit on behalf of the Trust. That makes it well-nigh impossible to imagine a "useful purpose" in declaring the rights of Rose and the servicers when the plaintiff actually wants a declaration regarding the right of the Trust not to pay his mortgage. *Grand Trunk*, 746 F.2d at 326. Without a means to

---

[3] Given the Defendants' removal to federal court and Rose's acquiescence, there is no ongoing state proceeding in the present case. So the additional *Grand Trunk* factors are of limited relevance.

settle the present controversy, the Court declines to exercise jurisdiction over Rose's claim for declaratory relief.[4]

## IV. THE TRUST'S PREVIOUS CLAIMS

Even if the Court were to consider the since-dropped claims from the prior complaints, Rose still would not survive a motion to dismiss. Rose's first amended complaint is essentially the same as the second amended complaint, with the exception that it treats the Trust as the plaintiff rather than Rose. *Compare* First Amended Complaint (DN 8-2) *with* Operative Complaint (DN 11-2). So that complaint fails for the same reasons.

The Trust's original complaint includes additional statutory and tort claims for violations of the UCC, violations of RESPA, violations of the FDCPA, fraud, breach of contract, and injunctive relief. Complaint (DN 1-1) at 4–5. Even if Rose hadn't affirmatively abandoned those claims by now, he would still fail to survive the motion to dismiss. *See* Motion for Leave to File (DN 8) at 1 (asking the Court to consider a "narrow[ed]" set of claims).

Like an accounting, "'[i]njunctive relief' is not a cause of action, it is a remedy." *Thompson v. JPMorgan Chase Bank*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014). The papers nowhere identify any basis in law or equity for the Court to require "cessation of collection, reporting, assignment, and property entry" by the loan servicers. Complaint at 5. Nor do the papers connect this equitable remedy to any of his (now-dropped) statutory or common-law claims.

As for the alleged violations of the Kentucky Uniform Commercial Code, Rose cites Sections 3-301, 3-309, 9-210, and 1-304 without explanation. Complaint at 5. A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or a "formulaic" citation to a statute. *Twombly*, 550 U.S. at 555. Rose has provided no factual support for why these provisions apply to the mortgage loan. *See* Complaint at 5.

---

[4] The same problems would equally prevent Rose's earlier claim under Kentucky's declaratory-judgment statute. *See* Complaint at 4 (citing K.R.S. § 418.040). Rose has not alleged sufficient facts or described any legal theory through which to analyze his request for declaratory relief. And the Court would exercise its discretion to decline consideration of a declaratory-judgment request, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), under state as well as federal law, *see Leasing One Corp. v. Fidelity & Deposit Co. of Maryland*, No. 3: 11-cv-35, 2011 WL 3794367, at *2 (E.D. Ky. Aug. 25, 2011) ("[E]ven though this action was commenced under the Kentucky declaratory judgment statute, the Court relies on the broad discretion granted to it in the federal act[.]").

Nor would the original complaint state a claim under the Real Estate Settlement Procedures Act (RESPA) and its regulations. Under 12 U.S.C. § 2605 (e)(1)(A), a loan servicer must respond to any "qualified written request." But a request does not trigger a statutory obligation unless it involves "information relating to the servicing of the loan." *Id. See also Richissin v. Rushmore Loan Management Services*, No. 20-cv-871, 2020 WL 7024848, at *3 (N.D. Ohio Nov. 30, 2020). If anything, Rose's exhibits show that LoanCare *did* respond to Rose's numerous requests for information as required by RESPA. *See, e.g.*, Complaint at 39–65. The complaint includes an affidavit from Rose stating that the Defendants' "replied … with form correspondence asserting 'servicer' status." *Id.* at 113. Rose wanted (and perhaps still wants?) more: a "creditor affidavit, note, endorsements, assignment history, trust documents, custodial certifications, and accounting records." *Id.* at 3–4. But he provides no reason to believe that these unexplained requests relate to the servicing of his loan. Given the extensive evidence of communication between the parties, no judicial speculation is warranted regarding whether or why the Defendants' responses were insufficient under RESPA.

Next, the complaint listed an "FDCPA" claim for "[c]ollection without standing, during dispute, and through trespass." Complaint at 5. The Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, however, applies only to "debt collectors," not "the consumer's creditors." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (citation omitted). Both Lakeview and LoanCare service the original mortgage; neither appears to act as a third-party debt collector. *See* Complaint at 24–25. So Rose failed to allege facts supporting a claim that the Defendants engaged in "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Finally, Rose mentions claims of fraud and breach of contract. Here, too, his complaint is entirely devoid of supporting allegations. He lists "[f]ailure of disclosure, accounting duties, and good faith performance" and "[m]isrepresentation of authority and ownership." Complaint at 5. But he fails to specify any contractual terms that the Defendants have allegedly violated or to "state with particularity the circumstances constituting fraud or mistake" as required under Federal Rule of Civil Procedure 9(b).

## ORDER

The Court denies as moot the Defendants' motion to dismiss the original complaint (DN 7) and request to reject the proposed first amended complaint (DN 9), grants Rose's motions for leave to file a second amended complaint (DN 11) and sur-reply (DN 16), and grants without prejudice the Defendants' motion to dismiss (DN 7) as applied to the Second Amended Complaint (DN 11).



Benjamin Beaton, District Judge
United States District Court

September 30, 2026